MILDRED BOLITHO ET AL., RESPONDENTS, v. MAX MINTZ, APPELLANT.

Submitted October 26, 1929—Decided February 3, 1930.

For the respondents, *Oliver K. Day*.

For the appellant, *Collins & Corbin* and *Markley & Broad-hurst*.

The opinion of the court was delivered by

BLACK, J. This suit was brought to recover compensation for personal injuries, direct injuries to the wife, Mildred Bolitho, and incidental injuries to the husband, Henry W. Bolitho. The trial resulted in verdicts and judgments against the defendant and in favor of the plaintiffs. The defendant appeals and files eighteen grounds of appeal: First and second, error by the trial judge in refusing to nonsuit the plaintiffs or direct a verdict in favor of the defendant; three to eighteen, alleged errors in the charge to the jury by the trial judge, which are not argued in the appellant's brief. The grounds of appeal, however, are argued in the appellant's brief under two heads: *First.* There was no evidence that the porch which gave way, causing the injuries sued for, was a common passageway, the possession and control of which were retained by the defendant.

*Second.* There was no evidence of any negligence on the part of the defendant, which caused the injuries sued for.

Before discussing the questions argued, a clear and precise statement of facts are important, as they appear in the record, on which the verdicts of the jury are based. It is uncontradicted that on June 4th, 1928, Mr. and Mrs. Bolitho, the plaintiffs, were tenants of the defendant occupying the easterly apartment, on the third floor of the premises Nos. 48 to 50 Speedwell avenue, Morristown, New Jersey, owned by the defendant. The building was three stories high, having two stores on the ground level, apartments for two families on the second floor, and apartments for two families on the top floor, where the plaintiffs resided. A porch extended across the entire width of the house in the rear on the second and third floors. Each porch had four posts extending from the floor of the porch to the top. One was located on each corner and two in between. On the day of the accident, Mrs. Bolitho starterd to hang out clothes. The line was about half full and while leaning out to hang another piece on it, the corner post to which the pulley was fastened gave way, causing the railing in front of her, the post itself, and the line of clothes to fall into the yard.

The woodwork of the pillar or beam supporting the roof over the porch, the railing in the rear of the porch, became rotted, the nails rusted, causing the structure to become dilapidated and in a dangerous condition. The defendant offered no evidence and the case went to the jury on the plaintiffs' testimony. The plaintiff William Bolitho testified:

"*Q.* Did you have any conversation with him [*i. e.,* the defendant] as to where clothesline should go? *A.* Yes, I did. *Q.* What was your conversation? *A.* I wanted to know where the clothesline was to be put. *Q.* What did he tell you? *A.* He told me that in the rear of the building that there was an electric light pole there, that all the families in the house were using it and we should put ours up there too. *Q.* Was there any hook on the post at the time you took the premises? *A.* There was. *Q.* Is that the hook attached to *P*-17? *A.* That's the hook on the post at the time we came there. *Q.* How was the clothesline fastened to that post? *A.* On a pulley. *Q.* I show you this pulley and ask you where you got that from. *A.* That is the pulley which we attached for the clothesline on this post."

The plaintiff Mildred Bolitho testified:

"*Q.* Who used the porches? *A.* The four families of the house. * * * *Q.* Do you know what gave way first? *A.* The post that the clothesline was on gave way first. The court—That is the upright? The witness—Yes. *Q.* The upright post which the line was fastened to? *A.* Yes."

The plaintiffs had attached a clothesline to the pillar or post, which ran from the post to a building in the rear of the property. The plaintiff Mildred Bolitho took hold of the clothesline for the purpose of hanging clothes thereon, when the post and railing gave way, throwing her off the porch on the ground, causing the injuries sued for.

It must be conceded that in this state it is established as a general rule, the landlord is not liable for injuries sustained by a tenant or his family, or guests, by reason of the ruinous condition of the premises demised, there being upon the letting of a house or lands no implied contract or condition that the premises are or shall be fit and suitable for the use

of the tenants. *Siggins* v. *McGill,* 72 *N. J. L.* 263; *Reilly* v. *Feldman,* 103 *Id.* 517. But, there are clear and well-defined exceptions to this rule, as where the landlord retains to himself control of the halls and stairways for the common use of the occupants and those having lawful occasion to be there. *Gillvon* v. *Reilly,* 50 *Id.* 26; *Gleason* v. *Boehm,* 58 *Id.* 475; under such circumstances, the landlord is bound to take reasonable care to have such places reasonably fit for use in, or where the landlord agrees or assumes a legal obligation to repair. *La Brasca* v. *Hinchman,* 81 *Id.* 367; *Hahner* v. *Bender,* 101 *Id.* 102; *Perry* v. *Levy,* 87 *Id.* 670. This case falls within the exceptions noted. The rule applicable to the facts of the case was formulated and applied by Mr. Justice Minturn, in the case of *Charney* v. *Cohen,* 94 *Id.* 381, 382; *affirmed,* 95 *Id.* 538. In that case it was said, we think upon the *rationale* of the cases, to which we have adverted establishing the principle of liability or non-liability, the question of whether the landlord retained control of the balcony and rail for the general use of the tenants, and whether he used due care under the facts to keep it reasonably safe, were jury questions, where the testimony, as in the case at bar, was of a controverted character. That case was affirmed by this court on the opinion of Mr. Justice Minturn. The rule there applied is directly in point. It is controlling. It leads us to the conclusion that it was not error for the trial court to refuse to nonsuit the plaintiff or direct a verdict in favor of the defendant, as jury questions were involved under the testimony. The exceptions to the charge alleged as error are not argued, we therefore have not considered them.

Finding no error in the record, the judgment of the Supreme Court is therefore affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, TRENCHARD, PARKER, KALISCH, BLACK, CAMPBELL, LLOYD, CASE, BODINE, VAN BUSKIRK, McGLENNON, KAYS, HETFIELD, DEAR, JJ. 15.

*For reversal*—None.