119 N.J. Super. 338 (1972)
291 A.2d 580
HANNAH SAMUELSON, PLAINTIFF-RESPONDENT,
v.
VALERIE QUINONES, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued May 9, 1972.
Decided June 7, 1972.
*339 Before Judges LEWIS, HALPERN and LORA.
Mr. Richard E. Blumberg, Staff Attorney, argued the cause for appellant (Newark-Essex Joint Law Reform Project, Mr. Harris David, Director, and Mr. Stanley Varon and Mr. Edward Jasie, Newark Legal Services Project, attorneys).
Mr. Emil H. Block argued the cause for respondent.
PER CURIAM.
Plaintiff landlord instituted summary dispossess proceedings in the Essex County District Court claiming nonpayment of $220, representing two months rent. Defendant tenant sought an abatement alleging numerous defects, disrepairs and uninhabitable conditions of the demised premises, including the lack of heating facilities.
The subject apartment was a small four-room basement unit which defendant had rented for the past 2 1/2 years initially at a rental of $90 per month which was subsequently raised to $100 and then to $110 per month. At no time were there any heating fixtures or facilities in said basement apartment, the only source of heat being a gas range. The *340 trial judge disallowed any abatement with respect to the lack of heating facilities, but did allow an abatement of $30 per month, or a total of $60, for defective conditions relating to the gas range, kitchen sink, pipe leakage, broken window, cracked walls, hanging bathroom door, cracked and chipped plaster.
Defendant-appellant's main argument (in seeking a total abatement of rent) is that the trial judge erred in his conclusion that abatement of rent is not proper where certain conditions upon which such abatement is sought to be predicated existed at the inception of the letting and were observable by the tenant, notwithstanding the fact that such conditions violate a municipal housing ordinance.
Here, the municipal ordinance provides that no dwelling unit shall be rented or occupied unless such heating fixtures or apparatus are properly installed and conform to the municipal ordinances.
In support of total abatement, appellant urges: (1) that rental of the premises in violation of the municipal housing code constituted a violation of the covenant of habitability, the housing code constituting the standard by which to measure habitability; (2) that rental of the premises in violation of the housing code was an illegal contract unenforceable by the courts; and (3) that enforcement of the contract where there was a violation of the housing code would be against the State's public policy of protection of urban low-income tenants.
Our courts have not heretofore interpreted Marini v. Ireland, 56 N.J. 130 (1970), to mandate a complete rent abatement where conditions at the inception of the tenancy, of which the tenant has notice, violate local housing code regulations. Nor have they enunciated a policy of utilizing such codes as the standard by which to judge whether the landlord's implied covenant of habitability has been satisfied.
Marini imposed upon each landlord an implied covenant against latent defects, and explained such a covenant as follows:
*341 Actually it is a covenant that at the inception of the lease, there are no latent defects in facilities vital to the use of the premises for residential purposes because of faulty original construction or deterioration from age or normal usage. And further it is a covenant that these facilities will remain in usable condition during the entire term of the lease. [56 N.J. at 144]
Latent defects were also involved in Reste Realty Corp. v. Cooper, 53 N.J. 444 (1969), and Academy Spires, Inc. v. Brown, 111 N.J. Super. 477 (Cty. Ct. 1970) (which pointed out that it was not a case where a housing code explicitly prohibited rental of the premises in violation thereof).
In Berzito v. Gambino, 114 N.J. Super. 124, 128-129 (Cty. Ct. 1971), the trial judge indicated that a tenant who agreed in effect to accept the premises "as is" should not be allowed to obtain an agreement from the landlord as to the rent to be paid, take possession, and then require repairs and improvements by the landlord.
Javins v. First National Realty Corp., 138 U.S. App. D.C. 369, 428 F.2d 1071, cert. den. 400 U.S. 925, 91 S.Ct. 186, 27 L.Ed.2d 185 (1970), presented the question whether housing code violations which arise during the term of the lease have any effect upon the tenant's obligation to pay rent. The court held that a warranty of habitability measured by the standards set out in the local housing regulations is implied by operation of law into leases of urban dwelling units covered by those regulations, and that breach of this warranty gives rise to the usual remedies for breach of contract. The Javins court relied upon Brown v. Southall Realty Co., 237 A.2d 834 (D.C. App. 1968), which held that unsafe and unsanitary conditions in violation of the local housing code existing at the beginning of the tenancy and known to the landlord rendered any lease of those premises illegal and void, in stating that the basic validity of every housing contract depends upon substantial compliance with the housing code at the beginning of the lease term.
The court further held the fact finder must determine what portion, if any or all, of the tenant's obligation to pay rent was suspended by the landlord's breach; if no part is *342 found to have been suspended, then a judgment for possession may issue; on the other hand, if the entire rental obligation had been extinguished by the landlord's total breach, then the action for possession based on non-payment of rent must fail.
The approach formulated in Brown and Javins has been used in some other jurisdictions. See, for example, Longenecker v. Hardin, 264 N.E.2d 878 (Ill. Ct. App. 1970) (code violations at the inception of the lease agreement renders the lease illegal and void); Morbeth Realty Corp. v. Rosenshine, 67 Misc.2d 325, 323 N.Y.S.2d 363 (Civ. Ct. 1971) (warranty of habitability is measured by the standards set out in housing code); also Jack Spring, Inc. v. Little, 280 N.E.2d 208 (Ill. Sup. Ct. 1972); but cf., Posnanski v. Hood, 46 Wis.2d 172, 174 N.W.2d 528 (Sup. Ct. 1970) (which refused to imply the housing code regulations into lease agreements).
William J. Davis, Inc. v. Slade, 271 A.2d 412 (D.C. App. 1970), discussed what, if any, compensation a landlord is entitled to receive from his tenant for the use and occupancy of the premises where the lease is void and illegal. The court stated that since the lease is void ab initio, a tenant occupying premises under a Brown lease becomes a tenant at sufferance from the time he first takes possession; that this tenancy, unlike the tenancy attempted by the lease, is legal; hence the normal rule denying quasi-contractual recovery should not be followed; and that although the landlord is entitled to nothing for what he gave the tenant under the lease, he is entitled to the reasonable value of the premises in its condition as it was when occupied. See also Amanuensis, Ltd. v. Brown, 65 Misc.2d 15, 318 N.Y.S.2d 11 (Civ. Ct. 1971), in which the court stated that a persuasive case can be made for reducing rent in proportion to the gravity of the housing code violations.
While Marini and its progeny in New Jersey have not gone so far as to incorporate local housing codes into every lease agreement, the violation here involved (lack of heating *343 apparatus) clearly goes to the issue of habitability. Neither Marini nor Javins stand for the proposition that a breach of implied warranty or a violation of a building code or ordinance mandates a 100% abatement of rent; rather, Marini emphasizes the application of equitable principles.
We take judicial notice of the fact that there is an acute shortage of low-income housing in the City of Newark, and that such housing which exists is frequently not in full compliance with the city's housing ordinances and building codes. We must also recognize the hard practical facts of life that if landlords, under existing conditions, were to be deprived of all rents because of noncompliance with such ordinances and building codes there would be far fewer available low income housing units  landlord would either abandon their properties, or if they spent the money needed to comply with the ordinances and codes the amount or rent they would have to charge would price low income tenants out of the market. The problem seems to be almost insoluable.
On balance, we feel the trial judge should have determined the reasonable value of the demised premises, with its lack of heating facilities, and thereafter should have deducted therefrom the $30 per month by way of abatement for the defective conditions he found to exist therein. Any and all adjustments are to be made as of the date of the summary dispossess proceeding. Marini v. Ireland, 56 N.J. at 146-147. While this approach is not a complete answer to the difficult problems involved, it appears to us to furnish an equitable basis for relief.
We note in passing, that part of the problems presented can be best handled by the city in the enforcement of its ordinances and codes.
Remanded to the Essex County District Court for further proceedings in accordance with this opinion.