799 A.2d 696

DOREE BANDLER, PLAINTIFF–APPELLANT, v. DAWN MAURICE, DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued May 21, 2002—Decided June 21, 2002.

Before Judges PRESSLER, PARRILLO and PAYNE.

*Doree Bandler,* appellant argued the cause pro se.

*Thomas M. Egan* argued the cause for respondent (*Egan & Novak* attorneys, *Mr. Egan* on the brief).

The opinion of the court was delivered by

PAYNE, J.S.C. (temporarily assigned).

Plaintiff Doree Bandler and her housemate, both college students, leased a condominium unit from the defendant owner, Dawn Maurice, for a one-year term commencing on September 1, 1999. The lease provided a "1st right to lease renewal."

From the outset, certain problems with the condominium unit allegedly existed, consisting of the owner's failure to paint, adequately fumigate, clean the fireplace, change the locks, and fix the dryer. Notice of the problems was given to the owner. However, a timely cure was not effected, and some problems were not addressed at all. To make matters worse from a tenants' perspective, in February and again in May 2000, Maurice notified Bandler and her housemate that their lease would not be renewed because the unit was under contract for sale, and they were advised to quit the premises on August 31, 2000.

What followed is a tangled tale fraught with error. In July 2000, Bandler, acting *pro se,* filed suit against Maurice in the Special Civil Part seeking damages for "diminution of the value of [her] tenancy" stemming from the unresolved problems with the unit as well as its sale "without regard to [her] rights as a tenant." Maurice responded by filing a counterclaim seeking back rent and a separate summary eviction action for nonpayment of rent, claiming that she had not agreed to the request of Bandler and her housemate that their security deposit be used to fulfill their final rental obligations. On August 23, 2000, Bandler's father and Maurice's lawyer agreed that Bandler would leave the unit on August 31, but that Bandler would "retain any rights to a continued tenancy she might already have and then to pursue that and any other claims she might have through the Courts." As consideration for the agreement, the eviction action and counterclaim were allegedly to be dismissed. In fact, dismissal of the eviction action took place. Dismissal of the counterclaim did not occur. However, Maurice's attorney acknowledged in subsequent proceedings that, since the security deposit had in fact been utilized in lieu of rent, only $58 remained owing. Defendant has not sought to preserve her claim to this amount, and has treated the eventual dismissal of plaintiff's action as though it disposed of all issues.

The dismissal of plaintiff's action, which occurred following multiple further proceedings, resulted from several errors on the part of the trial judge. In a hearing conducted in November 2000, the judge construed the complaints about the condition of the condominium unit that plaintiff asserted directly in Count One of her contract action as if they had been offered as a defense to a claim of nonpayment of rent in a summary eviction action, based on a breach of the landlord's warranty of habitability under *Marini v. Ireland,* 56 *N.J.* 130, 265 *A.*2d 526 (1970). As a consequence, the trial court severed that count and referred it to another judge for a *Marini* hearing. In characterizing plaintiff's affirmative claims for diminution of the value of her tenancy as

*Marini* claims, the trial judge erred. Plaintiff sought damages for breach of contract; she was not defending on habitability grounds against an eviction action premised on nonpayment of rent. In the context presented, the principles of *Marini*, established to safeguard a tenant from eviction when rent is withheld to ensure habitability, were inapplicable. Thus, this count of plaintiff's contract suit should not have been severed or tried as a non-jury matter, contrary to plaintiff's demand. In this case, the court's error was fatal to plaintiff's cause, since the *Marini* judge held (not without reason) that none of the defects claimed by plaintiff rendered her unit uninhabitable, and he therefore dismissed that portion of plaintiff's action to which he had been erroneously assigned. *See Academy Spires, Inc. v. Brown,* 111 *N.J.Super.* 477, 482–83, 268 *A.*2d 556 (Dist.Ct.1970). That determination is therefore reversed, and Count One is remanded for trial as an integral element of plaintiff's contract action. *Sommer v. Kridel,* 74 *N.J.* 446, 454–57, 378 *A.*2d 767 (1977).

In the meantime, plaintiff had amended her complaint to seek damages for wrongful termination of the tenancy and denial of the right to exercise the lease's renewal option (Count Two); enforcement of the August agreement between plaintiff's father and Maurice, which plaintiff claimed relieved her of her obligation to pay rent for the last six weeks of the lease term and required return of her security deposit (Count Three); and damages consisting of the difference between the fair market value of the premises when delivered vacant and its value if encumbered by the lease that plaintiff claimed to have been wrongfully terminated (Count Four). Each of those counts was dismissed by the trial judge, who granted summary judgment in favor of defendant Maurice. In doing so, the court found the Anti–Eviction Act (AEA), *N.J.S.A.* 2A:18–61.1 to –61.12, upon which plaintiff placed reliance, to be inapplicable to the lease and sale of a single condominium unit, and it therefore rejected as a matter of law plaintiff's claim of damages resulting from defendant's alleged breach of that Act. Instead, the court focused on the option provision of the lease, ruling correctly in defendant's favor in that

regard on the ground that any rights conveyed by the option were cut off by the sale of the property and by plaintiff's failure to give 60-days' notice of her intention to exercise the option. The court did not address Count Three of the complaint, nor did he discuss Count Four.

No legal basis for Count Four has been suggested in this appeal, and we see none. Summary judgment on that Count is therefore affirmed, despite the short shrift accorded to it below. We reverse and remand as to the remainder, finding legal error in the court's failure to recognize the applicability of the AEA to plaintiff's claims in Count Two (*see, e.g., Vander Sterre Bros. v. Keating,* 284 *N.J.Super.* 433, 665 *A.*2d 779 (App.Div.1995)) and unresolved issues of fact that preclude summary judgment on the unaddressed Count Three.

We address plaintiff's claims under the AEA in greater detail. *N.J.S.A.* 2A:18–61.1(*l*)(2) permits the Superior Court, on 60–days' notice, to remove for cause any condominium tenant upon proof that the owner of three or less condominium units "has contracted to sell the unit to a buyer who seeks to personally occupy it and the contract for sale calls for the unit to be vacant at the time of closing." Under *N.J.S.A.* 2A:18–61.1(*l*)(1), a provision applicable to owners of more than three condominium units, the right to removal upon sale to an occupant-purchaser exists only if the tenant was given, at the inception of the tenancy, a prescribed statement of tenant's rights that is set forth in *N.J.S.A.* 2A:18–61.9. Failure to provide this notice deprives the court of jurisdiction over an eviction action and extends the mandated notice from the sixty-day period applicable to post-conversion tenants to the three-year period applicable to pre-conversion tenants. *Vander Sterre Bros., supra,* 284 *N.J.Super.* 433, 665 *A.*2d 779.

In a decision rendered after defendant's motion for summary judgment was heard, we distinguished the notice requirements imposed upon owners of more than three condominium units under *N.J.S.A.* 2A:18–61.1(*l*)(1) from the requirements imposed upon owners of less than three units under subsection (2), and we

held that the formal notice set forth in *N.J.S.A.* 2A:18–61.9 was required only of owners of more than three units. *224 Jefferson Condo. Ass'n v. Paige,* 346 *N.J.Super.* 379, 390, 788 *A.2d* 296 (App.Div.), *certif. denied,* 172 *N.J.*179, 796 *A.2d* 896 (2002). The less stringent standards for eviction applicable to owners of three units or less, we held, were justified by the substantial differences between such owners and owners of a larger development. *Id.* at 386–87, 788 *A.2d* 296. We found that penalties for statutory violation applied equally to both classes of owners. *Id.*

We are uncertain whether the notice provided by defendant pursuant to *N.J.S.A.* 2A:18–61.1(*l* )(2) was statutorily adequate under the standards discussed in *224 Jefferson,* since no evidence was presented below to establish that defendant had entered into a contract of sale at the time notice was provided[1] or that defendant's buyer intended to occupy the unit. We therefore remand to permit the parties to present any proofs they may have on these issues, legal arguments related to those proofs, and any legally supportable damage claims. In this regard, we note the availability of treble damages and attorney's fees to tenants whose tenancy has been terminated in violation of the AEA. *See N.J S.A.* 2A:18–61.6.

We conclude by addressing one final error by the trial court, included in plaintiff's amended notice of appeal. After plaintiff had filed her initial appeal from the orders of dismissal entered against her, the trial judge granted a motion by defendant to modify the judgment of dismissal of Counts Two through Four to grant defendant $5,129.52 in attorney's fees as the result of plaintiff's failure to accept an offer of judgment that had been made pursuant to *R.* 4:58–1 earlier in the case. The trial judge lacked jurisdiction to enter this order at a time when plaintiff's appeal was pending. *R.* 2:9–1; *Manalapan Realty v. Township Committee,* 140 *N.J.* 366, 376, 658 *A.2d* 1230 (1995); *Sturdivant v. General Brass & Machine Corp.,* 115 *N.J.Super.* 224, 227, 279

---

[1] A prophylactic notice of an intent to sometime sell would be statutorily inadequate.

*A*.2d 110 (App.Div.), *certif. denied* 59 *N.J.* 363, 283 *A*.2d 107 (1971). Further, the order had no legal foundation, since plaintiff was not awarded anything on her unliquidated damage claim, let alone an amount within the monetary range required by *R.* 4:58-3 as a basis for an imposition of attorney's fees; a range that "was evidently intended to protect a plaintiff from the penalizing consequences of the rule where [s]he prosecutes the action in good faith, an offer is made by the defendant in a nominal amount, and a no-cause verdict is returned." Pressler, *Current N.J. Court Rules,* comment on *R.* 4:58.

■ Of greater importance, we hold the offer of judgment rule to be inapplicable to claims in the Special Civil Part. In this regard, we note that no provision of the Special Civil Part Rules authorizes the use of that device by adoption. However, we do not base our determination on that ground alone, preferring instead a less mechanistic approach that focuses on an analysis of the effect of this particular rule upon special civil practice.

In *Lettenmaier v. Lube Connection, Inc.,* our Supreme Court held that an award of statutorily-authorized attorney's fees under the Consumer Fraud Act should be excluded from a calculation of the jurisdictional limit of the Special Civil Part, since if it were included, actions otherwise cognizable in that Part would have to be filed in the Superior Court. *Id.* 162 *N.J.* 134, 143, 741 *A*.2d 591 (1999). The Court's rationale, was that

[s]uch a state of affairs would confound the purposes behind the Special Civil Part Rules, which are designed to provide "a streamlined structure and practice for the inexpensive and expeditious disposition of the many relatively minor ... cases which make up the vast bulk of litigation in this state." *Andriola v. Galloping Hill Shopping Center,* 93 *N.J.Super.* 196, 200, 225 *A*.2d 377 (App.Div.1966). The rules governing the Special Civil Part limit the costs of instituting and trying actions, abbreviate time periods, and restrict discovery.... Those devices control costs and promote the expeditions disposition of actions. *Andriola, supra,* 93 *N.J.Super.* at 201, 225 *A*.2d 377. They are perfect vehicles for litigation of actions that do not involve large sums of money.

[*Lettenmaier, supra,* 162 *N.J.* at 143–44, 741 *A*.2d 591.]

Importation of the offer of judgment rule into special civil practice would defeat the purpose of the Special Civil Part and its rules, as expressed in *Lettenmaier,* by creating, within the proce-

dures of a court designed to afford prompt and effective relief to persons appearing, in the main, without legal representation, a costly trap for those unfamiliar with the potential consequences of nonacceptance of a reasonable judgment offer. We note that the offer of judgment rule has, as its salutary purpose, the encouragement of early settlement of both liquidated and unliquidated claims. However, because of the streamlined procedures that exist in the Special Civil Part and the expeditious disposition of actions filed there, the objective of "early" settlement, so significant in Law Division actions, has little relevance in this context. Moreover, as a result of the dangers we perceive as existing if the offer of judgment rule is utilized in an unlawyered setting, we regard the goal of pretrial resolution to be better effected in the Special Civil Part by the employment of other available mediation and settlement devices.

The grant of summary judgment in defendant's favor on Count Four of plaintiff's complaint is affirmed. The courts' dismissals of Counts One, Two and Three are reversed, and the matter is remanded to the Special Civil Part for further proceedings consistent with this opinion.