**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0273-24

KTWE GROUP, LLC,

 Plaintiff-Respondent,

v.

SIMON BALAJ and
URVAT BALAJ,

 Defendants-Appellants.

_____

> Argued September 9, 2025 – Decided September 18, 2025
>
> Before Judges Sumners and Susswein.
>
> On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. LT-004210-24.
>
> Kristen S. Oh argued the cause for appellants (Northeast New Jersey Legal Services, Inc., attorneys; Lawrence Sindoni and Kristen S. Ho, of counsel and on the brief).
>
> Tamer M. Abdou (Abdou Law Offices, LLC) argued the cause for respondent.

PER CURIAM

In this landlord-tenant dispute, defendants Simon and Urvat Balaj appeal the September 16, 2024 Special Civil Part order entering judgment for possession in favor of plaintiff KTWE Group, LLC. Defendants raise numerous arguments. We focus on their contention that the trial court erred in finding that plaintiff complied with the notice requirements of the Anti-Eviction Act (Act), N.J.S.A. 2A:18-61.1 to -61.12. We also address defendants' contention that plaintiff's eviction complaint should have been dismissed because the proposed new lease included unreasonable provisions that essentially abrogated the implied warranty of habitability that applies to leased residential premises. After reviewing the record in light of the parties' arguments and governing legal principles, we reverse and vacate the order entering judgment for possession.

I.

We discern the following facts and procedural history from the record. In August 2020, defendants entered into a lease for a house on North Monroe Street in Ridgewood. At the time of the trial, defendants testified that they lived there with their two young children.

The two-year lease required defendants to pay rent in the amount of $2,850 per month. When the lease expired in August 2022, it became a month-to-month tenancy.

A-0273-24

In November 2023, plaintiff purchased the Monroe Street residence from the former landlord. On November 17, plaintiff emailed defendants a proposed lease renewal for a term of seven months with a November 17 start date. Plaintiff did not provide notice to terminate the pre-existing month-to-month tenancy.

The proposed seven-month lease renewal required a monthly rent of $2,850—the same amount as the original lease. However, if defendants remained in the residence after the renewal lease ended on June 30, 2024, the monthly rent would rise to $5,000.

The proposed renewal lease further stated under the provision entitled "condition of premises" that:

> Tenant understands that [l]andlord is allowing this lease to continue for the purpose of [t]enant's children completing the school year in Ridgewood. Notwithstanding, should any system in the home fail, including, but not limited to, heat, plumbing, roof, that would then render the home uninhabitable, [t]enant understands that [l]andlord will not address same as the home is being torn down at the end of the lease. Accordingly, in that event, the lease will be immediately terminated.

The proposed lease further stated, "[a]ll appliances and other contents of the property are 'AS IS.' Landlord will not be responsible for any repairs to any items in the home including appliances."

3

On November 21, plaintiff contacted defendants to discuss the proposed lease. Defendants refused to sign the renewal because they thought it contained unreasonable terms. Defendants asked plaintiff to use the pre-existing lease as a template, but plaintiff refused.

Several months later, plaintiff provided defendants with two notices to quit—one on May 1, 2024 and another on May 24, 2024. The first notice to quit did not state the reason for termination or when the premises must be vacated. The second notice to quit included that information. Neither notice, however, was accompanied by or included a proposed lease with terms pertaining to rent or the parties' obligations.

On July 22, 2024, plaintiff filed a complaint for residential eviction based on defendants' refusal to sign a proposed lease, N.J.S.A. 2A:18-61.1(i). After the September 16, 2024 bench trial, the trial court entered judgment for possession in favor of plaintiff and issued an oral opinion.

On September 27, 2024, a warrant of removal was issued. On the same day, defendants filed a notice of appeal. On October 1, defendants applied to stay the execution of the warrant of removal pending appeal, which the trial court denied on October 3.

4

Because the lock-out was scheduled for October 10, defendants filed an application with the Appellate Division for permission to file an emergent motion for a stay pending appeal. On October 7, we granted permission to file the emergent motion, and on October 21, we granted defendants' emergent motion to stay the warrant of removal pending appeal.

This appeal followed.[1] To ensure that we accurately summarize the contentions defendants raise for our consideration, we reproduce the point headings from their appeal brief:

> POINT I
>
> THE TRIAL COURT ERRED IN FINDING THAT PLAINTIFF PROPERLY TERMINATED THE PRE-EXISTING TENANCY PURSUANT TO N.J.S.A. 2A:18-61.1(i) GIVEN PLAINTIFF'S FAILURE TO SERVE A ONE-MONTH NOTICE TO QUIT BEFORE OFFERING THE PROPOSED LEASE.
>
> POINT II
>
> THE TRIAL COURT ERRED IN FINDING THE PROPOSED LEASE REASONABLE WHERE IT SHIFTED RESPONSIBILITY FOR REPAIRING ANY DEFECTS IN THE PREMISES FROM PLAINTIFF TO DEFENDANTS IN VIOLATION OF

---

[1] Oral argument was originally scheduled for January 14, 2025, but was delayed at the request of both parties.

THE WARRANT[Y] OF HABITABILITY AND MARINI[2] DOCTRINE.

POINT III

THE TRIAL COURT ERRED IN FINDING THAT THE INTENDED RENT INCREASE FROM $2,850[] TO $5,000[] WAS REASONABLE.

POINT IV

THE [TRIAL] COURT ERRED IN DETERMINING THAT THE NEW LEASE SET FORTH TERMS OF SEVEN . . . MONTHS WITH INTENT TO DEMOLISH THE PREMISES WAS REASONABLE.

POINT V

THE TRIAL COURT ERRED IN DETERMINING THAT DEFENDANTS HAVE NOT ESTABLISHED THAT THE NEW LEASE WAS UNREASONABLE.

II.

We begin our analysis by acknowledging the foundational legal principles governing this appeal. As a general proposition, we apply a deferential standard in reviewing a trial court's factual findings in a bench trial. Balducci v. Cige, 240 N.J. 574, 595 (2020); State v. McNeil-Thomas, 238 N.J. 256, 271 (2019). In an appeal from a non-jury trial, appellate courts "give deference to the trial court that heard the witnesses, sifted the competing evidence, and made

---

[2] Marini v. Ireland, 56 N.J. 130 (1970).

A-0273-24

reasoned conclusions." Griepenburg v. Twp. of Ocean, 220 N.J. 239, 254 (2015). Accordingly, reviewing courts "do not disturb the factual findings and legal conclusions of the trial judge unless [the reviewing courts] are convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice[.]" Seidman v. Clifton Sav. Bank, S.L.A., 205 N.J. 150, 169 (2011) (quoting In re Tr. Created By Agreement Dated Dec. 20, 1961, ex rel. Johnson, 194 N.J. 276, 284 (2008)) (quoting Rova Farms Resort, Inc. v. Inv'rs Ins. Co. of Am., 65 N.J. 474, 484 (1974)) (internal quotation and editing marks omitted).

However, and importantly for purposes of the present matter, "[a] trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Rowe v. Bell & Gossett Co., 239 N.J. 531, 552 (2019) (quoting Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

Turning to substantive legal principles, N.J.S.A. 2A:18-61.1 specifies that a landlord cannot remove a residential tenant "except upon establishment of one of the [enumerated] grounds as good cause." This appeal turns on the ground set forth in N.J.S.A. 2A:18-1-1(i), which permits eviction when "[t]he landlord or owner proposes, at the termination of a lease, reasonable changes of substance

7

in the terms and conditions of the lease, including specifically any change in the term thereof, which the tenant, after written notice, refuses to accept."

To pursue an eviction, a landlord must comply with certain notice requirements set forth in N.J.S.A. 2A:18-61.2, which provides in pertinent part:

> No judgment of possession shall be entered for any premises covered by section 2 of this [A]ct . . . unless the landlord has made written demand and given written notice for delivery of possession of the premises.  The following notice shall be required:
>
> . . . .
>
> e.  For an action alleging refusal of acceptance of reasonable lease changes under subsection i. of section 2, one month's notice prior to institution of action; . . . .
>
> [N.J.S.A. 2A:18-61.2(e).]

We add the Act "reflects a public policy barring dispossess actions except upon strict compliance with the notice and procedural requirements of the Act." 224 Jefferson St. Condo. Ass'n v. Paige, 346 N.J. Super. 379, 383 (App. Div. 2002).  The strict compliance requirement applies even if the landlord acts in good faith or the tenant suffers no appreciable prejudice.  Ibid. (citing Weise v. Dover Gen. Hosp., 257 N.J. Super. 499, 504 (App. Div. 1992)).  Stated another way, "the statute leaves no latitude for a judicial construction which excuses failure to give the specified notice."  Vander Sterre Bros. Constr. v. Keating,

A-0273-24

284 N.J. Super. 433, 438 (App. Div. 1995). Furthermore, "[a]bsent strict compliance with the requirements of the Act, a court is without jurisdiction to entertain a summary dispossession action." Id. at 440 (quoting Bayside Condos., Inc. v. Mahoney, 254 N.J. Super. 323, 325 (App. Div. 1992)).

Importantly for purposes of this appeal, the notice to quit terminating a tenancy must be served before or in conjunction with the notice offering a new tenancy at an increased rent. Harry's Vill., Inc. v. Egg Harbor Twp., 89 N.J. 576, 583 (1982). The notice must state the reason for termination, the parties' names and relationship as landlord and tenant, the date that the premises must be vacated, and the date that the right to possession terminates. Id. at 585. Our Supreme Court explained the purpose of the notice to quit is to "provide[] the landlord with time to find another tenant" and give the tenant "a month to decide whether to accept changes in the rental terms or to seek alternative living arrangements." Id. at 584. "Absent a notice to quit, any attempt to increase the rent is ineffective and the tenancy continues at the old rental term." Id. at 583 (citing Stamboulos v. McKee, 134 N.J. Super. 567, 571 (App. Div. 1975)); Skyline Gardens, Inc. v. McGarry, 22 N.J. Super. 193, 196 (App. Div. 1952). If a landlord gives a proper notice to quit and notice of rent increase, "a tenant, by

9

holding over, creates a new tenancy at the increased rental." Ibid. (citing Stamboulos, 134 N.J. Super. at 571).

### III.

We next apply these legal principles to the present facts. N.J.S.A. 2A:18-61.1(i) specifies that defendants could not be removed from the Monroe Street residence until their month-to-month lease had first been terminated. N.J.S.A. 2A:18-61.2(e) explicitly provides the trial court could not enter judgment for possession in plaintiff's favor unless plaintiff provided a proper notice to quit at least one month before the commencement of the dispossession action.

Although plaintiff's May 1 notice to quit was deficient, the May 24 notice to quit included all necessary information. However, plaintiff failed to serve the May 24 notice to quit before or while serving the notice of rent increase. Plaintiff thus failed to comply with N.J.S.A. 2A:18-61.1(i) because the ground for eviction codified in that subsection required the tenancy to be terminated when the landlord offered the rent increase. In view of the strict compliance standard that governs our interpretation and enforcement of the Act, we have no discretion to ignore or excuse such procedural mistakes. Jefferson, 346 N.J. Super. at 383. And because the Act leaves "no latitude for judicial construction which excuses failure to give the specified notice[,]" the trial court was "without

10

jurisdiction to entertain [the] summary dispossession action." Vander, 284 N.J. Super. at 438, 440.

## IV.

In the interests of completeness, we next address defendants' contention that the trial court erroneously found the terms of the proposed new lease not to be unreasonable. N.J.S.A. 2A:18-61.1 "places the burden of establishing one of the possible grounds for eviction upon the landlord." Fromet Props., Inc. v. Buel, 294 N.J. Super. 601, 610 (App. Div. 1996). Furthermore, "[t]he failure to meet this burden 'is sufficient ground to warrant dismissal for lack of jurisdiction.'" Sudersan v. Royal, 386 N.J. Super. 246, 251 (App. Div. 2005) (quoting Marini, 56 N.J. at 138).

Our Supreme Court has firmly embraced the "implied warranty of habitability," which imposes a duty on landlords to maintain safe and habitable dwellings for tenants. Marini, 56 N.J. at 142. The Court stressed that "[t]o follow the old rule of no implied warranty of habitability in leases would, in our opinion, be inconsistent with the current legislative policy concerning housing standards." Ibid. In Trentacost v. Brussel, the Court further explained, "the necessities of a habitable residence include sufficient heat and ventilation, adequate light, plumbing and sanitation and proper security and maintenance."

11

82 N.J. 214, 225 (1980).  The implied warranty of habitability also presupposes "that [a landlord] has further agreed to repair damage to vital facilities caused by ordinary wear and tear during [the lease] term."  Marini, 56 N.J. at 144.

As we have noted, plaintiff presented defendants with a proposed lease renewal that stated it would not address any system failure, including heat, that would render the home uninhabitable.  The trial court found that "defendant has not established that the new lease was unreasonable."  We disagree.  Plaintiff failed to establish that the terms of its proposed lease were reasonable, as those terms essentially required defendants to waive the protections afforded to tenants under the Marini doctrine.  The proposed lease, in other words, fails to satisfy a landlord's duty to maintain a safe and habitable dwelling for its tenants.[3] In these circumstances, we conclude that plaintiff has not satisfied its burden under N.J.S.A. 2A:18-61.1(i) of establishing that defendants refused to accept "reasonable changes of substance in the terms and conditions of the lease."

---

[3]  We add that the proposed new lease would not comply with the Multiple Dwellings Code, N.J.A.C. 5:10-1.1 to -29.1, and the Village of Ridgewood, New Jersey Housing Standards, Village of Ridgewood, N.J., Code § 175-2 (amended Dec. 11, 1984), which reinforce the implied warranty of habitability by ensuring that the landlord is responsible for providing heat.  See N.J.A.C. 5:10-14.4 ("The owner shall be obligated to supply required fuel or energy and maintain the heating systems in good operating condition so that it can supply heat as required herein . . . .").

A-0273-24

Because we reverse the order entering judgment for possession based on both the failure to provide the notice to quit before the notice to increase rent and the unreasonable terms of the proposed new lease with respect to the warranty of habitability, we need not address defendants' contention that the trial court erred in finding that the amount of the proposed monthly rent increase was not unconscionable.

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division

13