133 N.J. Super. 577 (1975)
338 A.2d 21
TIMBER RIDGE TOWN HOUSE, PLAINTIFF,
v.
JAMES AND MARY DIETZ, DEFENDANTS.
Superior Court of New Jersey, Law Division.
March 11, 1975.
*578 Mr. Thomas J. Donovan for plaintiff (Messrs. Portella, Donovan and Favieri, attorneys).
Mr. Dennis Riley for defendants (Messrs. Riley and Alaksen, attorneys).
KING, J.C.C., Temporarily Assigned.
This is an action for summary dispossession brought pursuant to N.J.S.A. 2A:18-53 et seq. alleging a default in rental payments for the month of October 1974. The monthly rental is $285 for this 3-bedroom, 2 1/2-bath, 2-story garden apartment or townhouse in Lindenwold. Defendants withheld rent due for one month, depositing the funds in their attorney's escrow account. Thereafter the monthly rentals were deposited in escrow pending this court's decision. Defense counsel made application to the court for removal of the matter to the Superior Court, Law Division, pursuant to N.J.S.A. 2A: 18-60, on the grounds that the issues raised were novel and *579 of sufficient importance to warrant an appeal. The court agrees. Plaintiff consented to this application and an order of removal was entered by the court. Both parties waived the right to jury trial and the matter was submitted to the court as trier of fact.
Defendants raise so-called habitability defenses and request an abatement of a portion of the rent. The questions are novel because the allegedly affected area is external to the actual leased premises. Tenants claim the area immediately surrounding his leased townhouse is very poorly maintained and is overflowed by mud and water most of the time, presenting a physically and aesthetically undesirable situation. They also request an abatement because a swimming pool and playground area which was promised to the tenants on initial leasing have never been furnished. This latter assertion of lack of habitability raises the problem of the right to relief where the landlord has failed to furnish certain amenities which are to be used in common with other tenants of the complex. (About 100 of the total 192 units are now completed and occupied).
Timber Ridge was designed as a family community. Of the 192 units ultimately to be constructed, about one-third are three-bedroom units and two-thirds are two-bedroom units. Of the 100 units presently occupied it was estimated that 80-85% include children among the tenants' families. The townhouse complex is located in Lindenwold, a town of about 23,000 residents, 16,000 of whom live in rental dwellings, located at the eastern terminus of the Philadelphia-Lindenwold High Speed Line. A brochure used in the rental of the properties was placed in evidence. Defendants leased the property in December 1973 in partial reliance upon the representations in the brochure. The brochure described the project as: "Quietly nestled in a gently rolling wooded glen * * * [offering] serene living in a beautiful country setting with on-site recreational facilities including a swimming pool and childrens' play area * * * and *580 individual patio facing a spacious landscaped court yard." The written lease agreement executed on December 1, 1973 for a term of one year refers to the premises as "the apartment consisting of 5 rooms and baths."
Tenants here seek to extend the doctrine of implied warranty of habitability beyond the actual physical structure. The court with the approval of the parties, inspected the premises exteriorly on the day following the final hearing, December 19, 1974. There is no doubt that the external conditions detract substantially from the tenants' living pleasure. Defendants' townhouse is immediately adjacent to the area where a large retaining wall is being constructed. Construction has been in progress for four months, and from the court's observation may continue for at least several more months. These defendant tenants are almost uniquely affected by the construction because of their proximity to the conditions. No other occupied unit is affected in such a severe manner. Their "individual patio facing a spacious landscaped court yard" is unusable, as it is surrounded and overflowed by mud and water. The mud flows over the walkway connecting defendants' main entrance-way and the common parking area. The parking area itself, especially where defendants or their visitors would park their vehicles, is covered with mud. The "court yard" which these tenants could legitimately anticipate appreciating is nonexistent throughout the course of construction. The construction prevents use of the patio and affects ingress and egress, use of the parking area and any outdoor recreational use of the area adjacent to the premises for either the two adult tenants or their three children. The subject premises is the highest price townhouse or apartment available in this municipality (oriented to multi-family dwellings). Tenants had a reasonable expectancy of a decent exterior environment from the sales promotion, the initial condition of the premises, and the higher price of the apartment compared to others in the community, *581 whether the expectancy be characterized as one of amenity or necessity. They are deprived of a substantial attribute of the premises through no fault of their own and they have no control over any possible remedy to the situation. Plaintiff landlord and developer was required to install the new concrete retaining wall by the municipality after defendants took possession. The initial wooden railroad tie wall had become unsafe.
The landlord argues that the implied warranty of habitability should not be extended beyond the scope of the presently controlling cases so as to encompass conditions exterior to the premises. The evolution of the doctrine to date has not explicitly included exterior conditions within its scope. In Reste Realty Corp. v. Cooper, 53 N.J. 444 (1969), where exterior surface water was flooding the first floor of a leased office building, our Supreme Court first recognized the necessity for a more contractually oriented analysis of a lease agreement and announced the implied warranty of habitability doctrine in a commercial leasehold setting. The court upheld the tenant's right to vacate before the termination of the lease in such a situation.
The Supreme Court in Marini v. Ireland, 56 N.J. 130 (1970), applied the doctrine to a duplex-apartment rented for dwelling purposes. The tenant was permitted to pay the cost of toilet repair and offset this expense against current rental by way of abatement. Analyzing the Marini lease according to contract principles, the court examined the intention of the parties, i.e., the representations of the landlord as to what he had available and the reasonable expectations of the tenant as to what she would obtain, and implied a warranty of habitability as a covenant of the lease.[1]
*582 Several years later the court decided Berzito v. Gambino, 63 N.J. 460 (1973), a county district court action by the tenant against the landlord for money damages. Plaintiff had occupied a particularly dilapidated second-floor apartment for several years and then vacated. Alleging that the landlord had breached an express oral agreement to make the premises "livable" and to make certain specific repairs, plaintiff sought a judgment for the difference between the actual rent paid and the fair rental value of the substandard accommodations during her stay. The action was in effect one for retroactive abatement. The Supreme Court permitted the judgment for plaintiff tenant in the amount of $1180 entered below to stand, thus approving the award of the abatement retrospectively through money damages. Again the court emphasized the contractual nature of a lease and specifically held that
* * * the covenant on the part of a tenant to pay rent, and the covenant  whether express or implied  on the part of the landlord to maintain the demised premises in a habitable condition are for all purposes mutually dependent. Accordingly, in an action by a landlord for unpaid rent a tenant may plead, by way of defense and setoff, a breach by the landlord of his continuing obligation to maintain an adequate standard of habitability. [at 469]
In Academy Spires v. Brown, 111 N.J. Super. 477 (Cty. Dist. Ct. 1970), the tenant withheld rent for three months, claiming various substandard conditions, including lack of heat, water, elevator service, trash facilities and water damages. Although there was no written agreement between the parties, the court implied into the oral rental agreement a covenant of habitability to effectuate the purpose of the lease, and then found a breach of that covenant. The *583 court felt it unreasonable to require a ninth floor tenant in a 400-unit complex to vacate as a prerequisite for abatement in this situation and granted a 25% reduction in rent. It was noted, however, that loss of amenities, such as lack of paint, plaster damage and defective venetian blinds of the apparently minimal character present in the Academy Spires case, did not come within the abatement doctrine.
In deciding what kind of defect will be deemed to constitute a breach of the warranty of habitability, the court is guided by the factors listed by Justice Mountain in Berzito. These factors are as follows:
1. Has there been a violation of any applicable housing code or building or sanitary regulations?
2. Is the nature of the deficiency or defect such as to affect a vital facility?
3. What is its potential or actual effect upon safety and sanitation?
4. For what length of time has it persisted?
5. What is the age of the structure?
6. What is the amount of the rent?
7. Can the tenant be said to have waived the defect or be estopped to complain?
8. Was the tenant in any way responsible for the defective condition?
Here, no housing code violation is present, but the work on the retaining wall, causing the unsavory condition, was required by the borough engineer as a public safety measure. The defect affects all outside use of the premises. In the context of the promotional effort and type of townhouse development promised, the court feels a vital facility is affected. There is a possible effect on sanitation and safety. The defect has persisted now for a period of four to five months and is not transitory. The structure and the project are virtually new. Defendants were original occupants and had a reasonable right to expect first quality facilities. The rental was the highest in the municipality. Defendant tenants cannot in any sense be charged with *584 waiver or estoppel and are in no way responsible for the defective condition. All of these factors support their position.
The court has considered the intention of the parties to this agreement as indicated by the representations of Timber Ridge to defendants, and defendants' reasonable expectations with respect to those representations, the location and type of residential environment of Timber Ridge, and the high rental fee for the premises. It is the finding of the court that an implied covenant arose between the parties, whether it is characterized as an implied warranty of habitability or an implied covenant to provide certain amenities. Further, the court finds that the implied covenant or warranty has been breached. An abatement of rent in the amount of 15% a month will be allowed from the date the rent was initially withheld and the summary dispossession action commenced.
The court has little to guide the admeasurement of damages other than the application of equitable principles. Samuelson v. Quinones, 119 N.J. Super. 338, 343 (App. Div. 1972). From observing the conditions the court feels at least 15% of the general livability of the premises is affected. The abatement will continue until the condition is rectified. The court stresses that in many multiple-family dwelling units exterior habitability would be a minimal or nonexistent consideration, especially in a city where the tenant's expectations are limited to a habitable apartment. In this suburban "townhouse" setting defendants did have a reasonable belief that they were renting some adjacent exterior living space, and their reasonable anticipation should not be frustrated.
Tenants also seek an abatement because the promised swimming pool facility and play area have never been provided. The court finds as a fact that these promised facilities were a substantial inducement offered by the landlord to procure the rental agreement. The brochure shows a *585 swimming facility and a sketch of a child playing croquette out of doors. Plaintiff actually installed the swimming pool, but was not able to install the slab and apron or open the pool during the summer of 1974 because the pool area is immediately adjacent to the new retaining wall. Heavy equipment must be used in the area of the pool for the construction work. The flooding and mud slide condition affecting the exterior of defendant tenants' townhouse also affects the nearby pool area. The playground is to be installed next to the pool and this area is similarly affected. Plaintiff promised at trial to complete the pool and playground areas as soon as construction of the retaining wall is completed. Plaintiff offered all tenants use of an alternate pool facility at a nearby project at the same modest charge contemplated for the unavailable onsite facility for the 1974 swimming season. Defendants did not accept this alternative offer. This situation then raises the question of whether an abatement of rent in a summary dispossess proceeding is the appropriate remedy where landlord has failed to provide expressly promised social amenities to be used by all tenants in common. No decision in the country known to the court has gone this far. Tenant here is no more affected by the landlord's failure to provide the pool and playground than any of the other approximately 100 tenants in possession at the site. This is in contrast to the very special and individualized harm tenant experienced with respect to the exterior habitability of his premises. The court is reluctant to extend the Marini doctrine as far as defendants desire. Where the living vitality of the rented facility and its immediate environs is not specially affected by the failure to perform, the court believes tenants' remedy, individually or in combination with other similarly aggrieved tenants, would be best handled in a more conventional legal proceeding. No abatement will be allowed for failure of plaintiff to provide swimming and playground facilities as promised. This determination is without prejudice *586 to the tenants' right to seek relief in an action at law for damages, possibly in a class action (R. 4:32) or in a proceeding in equity, if appropriate.
NOTES
[1] "A covenant in a lease can arise only by necessary implication from specific language of the lease or because it is indispensable to carry into effect the purpose of the lease. In determining, under contract law, what covenants are implied, the object which the parties had in view and intended to be accomplished, is of primary importance. The subject matter and circumstances of the letting give at least as clear a clue to the natural intentions of the parties as do the written words." 56 N.J. at 143.