174 N.J. Super. 577 (1980)
417 A.2d 89
C.F. SEABROOK COMPANY, PLAINTIFF-APPELLANT,
v.
MARY ANN BECK, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued March 25, 1980.
Decided June 19, 1980.
*580 Before Judges CRANE, MILMED and KING.
Philip Stripling argued the cause for appellant (Farr, Reifsteck & Wolf, attorneys).
*581 Joel Solow argued the cause for respondent (Robert D. Pitt, Director, Camden Regional Legal Services, Inc., attorney; Joel Solow and Ira Jay Katz, on the brief).
The opinion of the court was delivered by KING, J.A.D.
On this appeal plaintiff landlord contends that the trial judge erred (1) in ordering a retroactive abatement of rent for months in which the rent had previously been paid in full; (2) in awarding an abatement of $250 a month where the total rent was $325 a month; (3) by not making specific findings of fact on the issue of habitability and notice of defects as required by R. 1:7-4 and (4) by demonstrating prejudice against plaintiff and thereby denying it due process of law.
The demised premises were an old farmhouse on two acres of land in a rural section of Deerfield Township, Cumberland County. The house was surrounded by 40 acres of farmland; the nearest residence was approximately one-third of a mile away. Defendant had signed a written month-to-month lease in which she agreed to pay $325 a month commencing April 1, 1978.
According to defendant, she was supposed to move in on April 1, but because plaintiff had failed to install a stove and the heat was not functioning, she was unable to occupy the premises until May 14. Three of plaintiff's maintenance employees said that about the time of the inception of the lease the house was in reasonably good condition.
Defendant testified that shortly after she moved in and throughout the summer she spoke to Thomas Turner, plaintiff landlord's representative, concerning "various things that were not working" but that those "various things" were not repaired. However, Turner said that on many occasions when plaintiff attempted to effect repairs defendant was not home to allow entry to the workmen. Furthermore, Turner recalled that defendant *582 specifically complained of only two items during the summer of 1978  lack of a stove and a running toilet. The stove was delivered and hooked up on June 23. Turner said that he gave defendant a credit on rent for the missing stove. Plaintiff introduced into evidence several repair orders which indicated that plaintiff performed some repairs during the spring and early summer of 1978.
Defendant stopped paying rent in either August or September of 1978; she did not state which month. By letter dated September 19, 1978 defendant explained why she had stopped payment on her rent check. She complained of the following conditions: (1) a defective water pump which caused water and dampness in the basement and mildew and mold in the basement and the first floor; (2) the water was not "working" in the upstairs bathroom toilet and the downstairs basin; (3) the screens and storm windows needed repair or replacement; (4) the furnace did not run; (5) there was no ceiling light fixture in the dining room; (6) there was dry-rot and termite damage in the basement; (7) the exterior of the house needed painting and (8) interior paint was peeling because of the dampness.
Turner responded to this letter on September 28, 1978. Turner said that plaintiff would be "more than willing" to correct items one through six on defendant's September 19 letter, but pursuant to their September 23 conversation defendant was supposed to have contacted Turner to make arrangements for plaintiff's repairmen to enter the house and she had not done so. At trial Turner said that defendant did not contact him thereafter, nor did he attempt to contact her.
Thereafter, on October 13 defendant's attorney informed plaintiff that the items listed in the original letter should be repaired. The attorney offered to settle the matter by having defendant pay rental of only $150 a month until plaintiff repaired the premises. No agreement was reached and the complaint for possession was filed on December 12, 1978.
Somewhat different defective conditions became manifest between the time plaintiff filed its complaint in December 1978 *583 and the May 7, 1979 trial date. Defendant's principal witness was Robert Curley, a real estate broker who was formerly the senior housing inspector for the City of Bridgeton. He inspected the premises on three occasions, March 12, April 27 and May 6, 1979. Following his March inspection Curley prepared a report listing the defective conditions, many of which violated the State housing code. (For some reason, even though both parties and the court heavily relied upon this report, it was not marked into evidence.) The report cited the following defective conditions: (1) raw sewage leaking into the crawl space under the house, apparently from a blocked pipe or overloaded cesspool; (2) poor water drainage in the kitchen sink, first-floor toilet and first-floor wash stand; (3) several electrical problems, including exposed wires and the need to install or repair various lights, light switches and receptacles; (4) loose windows and defective screens and storm windows; (5) a leak under the window in the second floor bedroom; (6) dampness in the basement, (7) rotted wood near the northwest corner of the foundation and (8) deteriorating paint or wallpaper in the kitchen, ceiling, porch roof and the entire exterior. At trial Curley said that the sewage leak created the worst problem.
By May 6 plaintiff offered proof that most of these deficiencies had been corrected. The following still needed to be done: (1) repaint or repaper the wall and ceiling area in the kitchen, (2) paint the exterior, (3) put in three windowpanes, (4) scrape the paper and the paint on the second floor ceiling, (5) paint the first-floor foyer, (6) replace a windowpane on the second floor, (7) install glass in the storm windows, (8) paint the roof over the rear porch and (9) repair a leak under the second-floor window which caused plaster to fall.
Regarding the sewage problem, one of plaintiff's employees testified that at some undesignated time he twice cleaned the septic tank and cesspool. He said that the cause of the problem the first time was that the tank was too full. The second time, there were paper towels in the system.
The trial judge, relying in part on photographs submitted into evidence but not reproduced on this appeal, found that plaintiff *584 had breached its warranty of habitability. The judge did not give much weight to the testimony of plaintiff's employees, saying that he would not expect them to admit that "the place was in terrible condition." The judge particularly noted the sewage problem and a "dangerous" lack of porch railings. He reduced the rent to $75 a month, stating that "if we are going to have property that belongs in the slums we are going to have slum rates." The judge held that the abatement would be retroactive to April 1, the commencement of the tenancy, and would continue until every condition noted in Curley's report was corrected. However, he emphatically told defendant that she must permit plaintiff's employees to have ready access to the premises to make the needed repairs.
Defendant first contends that the appeal should be dismissed because a written judgment was never signed. She argues that since the judge never signed a judgment, this court will find it difficult to determine what is being appealed. Plaintiff responds that a judgment was entered in this case, and supplies a copy in its reply brief. This issue was the basis of plaintiff's motion "to determine propriety of appeal."
Defendant's argument is without merit. Clearly, only judgments, not opinions, are appealable; it is the judgment which enables the reviewing court to determine what was done below. Credit Bureau Collection Agency v. Lind, 71 N.J. Super. 326, 328 (App.Div. 1961); Homeowner's, etc., Inc. v. South Plainfield Sewerage Auth., 60 N.J. Super. 321, 323 (App.Div. 1960). However, in county district court cases the judgment need not be signed by the trial judge. Under R. 6:6-4:
Upon receipt of the verdict of a jury, or upon determination by a judge sitting without a jury, the clerk shall note the judgment on the jacket and it shall take effect forthwith. The clerk shall thereupon enter the judgment and tax the costs.
That was done in this case. The judgment as entered by the clerk on the jacket states:
Habitability defense established. Rent abated to $75 per mo. Retroactive to April 1, 1978 until Inspector Robert E. Curley removes every exception at which time rent will return to the figure in the lease.
Judgment for possession. Warrant on request. The court retains jurisdiction.
*585 Defendant next contends that the appeal should be dismissed because under N.J.S.A. 2A:18-59 the judgment is not appealable. Plaintiff argues that any habitability issue goes to jurisdiction and that the court in this case exceeded its jurisdiction, thus rendering the judgment appealable under N.J.S.A. 2A:18-59.
N.J.S.A. 2A:18-59 provides in pertinent part that "proceedings had by virtue of this article shall not be appealable except on the ground of lack of jurisdiction." In an action for possession based on nonpayment of rent the county district court has jurisdiction only where there exists a default in rent. Marini v. Ireland, 56 N.J. 130, 137 (1970); Passaic Housing Auth. v. Torres, 143 N.J. Super. 231, 236 (App.Div. 1976). Failure of the tenant to pay rent does not alone confer jurisdiction; rather, there is a default when the rent is due, unpaid and owing. Marini, supra, 56 N.J. at 139. "Thus a tenant's evidence in substantiation of a defense that there is no default or that the default is not in the amount alleged by the landlord, is admissible on the jurisdictional issue." Ibid.
In effect, Marini holds that a tenant may appeal in any case where the trial court rejected the tenant's habitability defense. Whether the landlord has similar rights is not free from doubt. Defendant relies on Levine v. Seidel, 128 N.J. Super. 225 (App. Div. 1974), certif. den. 65 N.J. 570 (1974), a case where the county district court determined that the tenants did not owe all of the rent claimed due by the landlord. The landlord appealed, alleging that the court had incorrectly determined the amount of arrearages. Relying on N.J.S.A. 2A:18-59, this court dismissed the appeal on the basis that it had no jurisdiction. It reasoned:
Here, it is perfectly clear that the court below had jurisdiction to determine the amount of rent that was due and owing by each defendant and to determine the amount of the arrearages for the months of April and May. Plaintiff instituted the summary dispossess proceedings, and does not challenge the jurisdiction of the court on this appeal, but rather seeks to vacate and modify the judgments below in accordance with her contention as to the proper monthly rental due from each defendant. Obviously, this is a matter that may not be reviewed on appeal in view of the explicit language of N.J.S.A. 2A:18-59. [128 N.J. Super. at 229].
Whether Levine remains good law is open to debate. In Newark Housing Auth. v. West, 69 N.J. 293 (1976), our Supreme *586 Court, citing Levine, questioned whether a landlord should not have the right to appeal, saying, "... it would, in light of Marini, appear logical for a landlord aggrieved by a determination as to the amount of rent owing, to argue that a jurisdictional error had been made, giving him a right to appeal." Id. at 300, 354 A.2d at 69. However, the court found it unnecessary to decide the issue since the county district court in that case had exceeded its jurisdiction by staying the issuance of a warrant for removal for at least 22 months. Id. at 301. We need not tarry over whether Levine remains viable, for at least one issue on this appeal goes directly to the trial court's jurisdiction. Here the trial judge did more than award a generous abatement. He made that abatement retroactive to the commencement of the lease, and there is a substantial question as to whether in doing so he exceeded his jurisdiction.
The major legal issue on this appeal is whether the court had the jurisdiction to reduce the rent to $75 a month commencing with the beginning of the lease. Plaintiff contends that the court in effect sanctioned a counterclaim in violation of R. 6:3-4 which forbids counterclaims in summary dispossess actions. Defendant contends that the retroactive abatement is justified because the premises were never habitable. She concedes that because answers and discovery are prohibited in dispossess actions the landlord may find it difficult to prepare for and rebut evidence of defective conditions extending throughout the term, but she suggests that the problem could be remedied by a continuance or a relaxation of the rule against discovery in individual cases. Plaintiff observes that the policy of this State is to avoid multiplicity of litigation, and contends that to effectuate that policy, all landlord-tenant habitability disputes should be resolved at one hearing.
Contrary to defendant's contention this panel recently decided the issue in Fargo Realty, Inc. v. Harris, 173 N.J. Super. 262 (1980), stating:
The Summary Dispossess Act was designed to enable the landlord to obtain speedy recovery of the premises. Newark Housing Auth. v. West, 69 N.J. 293, 300 (1976); Vineland Shopping Center, Inc. v. De Marco, 35 N.J. 459, 462 (1961). Consistent with the summary nature of the proceedings, our court rules do not *587 permit the filing of an answer, a counterclaim or discovery proceedings. R. 6:3-1; R. 6:3-4; R. 6:4-3(a). To allow the tenant to assert as a defense that the premises were uninhabitable during months wholly unrelated to the month for which rent is claimed would contravene the essential purpose of the summary dispossess proceeding. It would delay trials, which are supposedly to be held within 15 days after service of the complaint, R. 6:2-1, by extending the length of each and disrupting the calendar. Furthermore, the landlord would have no way of knowing in advance of trial which conditions were claimed to be defective and for what period of time. Since the landlord cannot obtain discovery, he would have no way of rebutting the evidence adduced by the tenant. Finally, the allegation that the premises were uninhabitable during unrelated periods of time is akin to a counterclaim. Academy Spires v. Jones, 108 N.J. Super. 395, 402 (Law Div. 1970). The tenant's remedy is to bring a separate action for the landlord's breach of his covenant of habitability. Berzito v. Gambino, 63 N.J. 460 (1973). [at 267]
In that case we relied upon the only New Jersey case to address this issue, Academy Spires, Inc. v. Jones, 108 N.J. Super. 395 (Law Div. 1970), which was decided before Marini v. Ireland, supra. In Academy Spires the tenants moved to transfer summary dispossess actions to the Superior Court, as allowed by N.J.S.A. 2A:18-60, so that the tenants could raise the defense, not yet firmly established, of lack of habitability. Anticipating Marini, the court denied the motion on the ground that the county district court had jurisdiction to entertain the defense. With respect to the issue raised herein, i.e., whether the tenant may raise as a defense lack of habitability during months for which rent is not sought, Judge Meanor said:

R. 6:3-4 forbids joinder of a summary action for possession with any other claim and also precludes the filing of a counterclaim or third-party complaint. The rule must of course, be honored and trial of the issue of habitability in summary action for possession will do no violence to it. Habitability as an issue in such an action in the county district court is subsidiary to a determination of the exact amount of the tenant's default for nonpayment of rent. Thus, the issue of habitability need only be litigated with respect to the period during which the landlord claims the tenant to be in default. To permit the tenant to raise the habitability issue with regard to a time period for which it is not claimed he is in default or for which the rent is already paid would be, in effect, to permit a counterclaim and this R. 6:3-4 forbids. If the tenant wishes to extend the controversy over a period of time not the subject of the landlord's claim of default, he will have to do so by separate action. [108 N.J. Super. at 402].
Defendant here points out that the Marini court held that lack of habitability is a defense which can be raised in a summary dispossess proceeding and that the court placed no limitation on *588 retroactive abatements. 56 N.J. at 139. Defendant urges that in Berzito v. Gambino, 63 N.J. 460, 469 (1973), the court held that the covenant to pay rent and the landlord's covenant to maintain the premises in habitable condition are for all purposes mutually dependent, and the tenant in an action for rent may plead, by way of defense and setoff, any breach of that covenant. Defendant further contends that in Iuso v. Capehart, 140 N.J. Super. 209, 211 (App.Div. 1976), this court said that a tenant in a summary dispossess action "may show a breach of the covenant of habitability by way of set-off" (emphasis supplied). Defendant then argues that a counterclaim has been defined as an "affirmative effort to enforce or collect upon an affirmative claim." Gibbins v. Kosuga, 121 N.J. Super. 252, 256 (Law Div. 1972). According to defendant, under that definition an award of a retroactive abatement would not constitute a counterclaim so long as it did not result in a money judgment to the tenant. She argues that an abatement of the type awarded here might more appropriately be considered a setoff, which has been defined as an "offsetting claim arising out of a completely independent and unrelated transaction." Atlantic City Hospital v. Finkle, 110 N.J. Super. 435, 439 (Law Div. 1970).
To answer these arguments it is necessary to distinguish between a counterclaim, a setoff and a recoupment. A counterclaim may include a setoff or recoupment, or both. Atlantic City Hospital v. Finkle, supra at 438. The terms setoff and counterclaim are generally used interchangeably. 20 Am.Jur.2d, Counterclaim, Recoupment, etc., § 10 at 235. A recoupment, however, must arise out of the same transaction that furnishes plaintiff's cause of action. Atlantic City Hospital v. Finkle, supra at 439; 20 Am.Jur.2d, Counterclaim, Recoupment, etc., § 11 at 235. It has been said that recoupment is synonymous with reduction. Id., § 12 at 236.
Although Iuso v. Capehart, supra, says that a tenant may show a breach of a covenant of habitability by way of setoff, it is more accurate to say that the habitability defense is more like a recoupment. As noted, R. 6:3-4 prohibits counterclaims, and a setoff is essentially the same as a counterclaim. We observe *589 that the Berzito court used the term setoff in connection with a suit for rent, instead of a summary dispossess action. 63 N.J. at 469.
In a typical summary dispossess proceeding the tenant will submit proofs relating to the condition of the premises during the period in which the tenant withheld rent and the trial judge will calculate the abatement accordingly. That procedure fits within the definition of a recoupment in that the habitability defense grows out of the identical transaction which furnished the landlord's cause of action. However, where the habitability defense goes to months in which a tenant has paid the rent, it cannot be said that the defense grows out of the identical transaction which furnished the landlord's cause of action. It was the nonpayment of rent which furnished the cause of action and a defense which seeks to establish lack of habitability during earlier months is more like a counterclaim or setoff. We agree with Judge Meanor's statement and adhere to our holding in Fargo Realty, Inc. v. Harris, supra, that "[t]o permit the tenant to raise the habitability issue with regard to a time period for which it is not claimed he is in default or for which the rent is already paid would be, in effect, to permit a counterclaim and this R. 6:3-4 forbids." Academy Spires v. Jones, supra, 108 N.J. Super. at 402.
Further, we disagree with defendant's contention that to avoid the expense and delay attendant upon multiple actions all habitability claims should be consolidated. Defendant correctly points out that it is the policy of this State to discourage multiple lawsuits. Wm. Blanchard Co. v. Beach Concrete Co., Inc., 150 N.J. Super. 277, 292 (App.Div. 1977), certif. den. 75 N.J. 528 (1977). We disagree principally because summary dispossess actions are not like other lawsuits. The sole purpose of such an action is to enable the landlord to obtain speedy recovery of the premises. Newark Housing Auth. v. West, supra, 69 N.J. at 300; Vineland Shopping Center, Inc. v. De Marco, supra, 35 N.J. at 462. The jurisdictional powers of the county district court in a summary dispossess proceeding are strictly statutory. Charlie *590 Collins Chevrolet v. Zebrowski, 130 N.J. Super. 116, 118 (App.Div. 1974). In furtherance of the policy behind the summary nature of the proceeding, our court rules do not permit the filing of an answer, a counterclaim, or discovery proceedings. R. 6:3-1; R. 6:3-4; R. 6:4-3(a). Matters determined in summary dispossess actions are not res judicata in subsequent actions between landlord and tenant, even over the same subject matter. Levine v. Seidel, supra, 128 N.J. Super. at 229-230.
To permit abatements for defective conditions which existed during months unrelated to the landlord's cause of action could unduly prejudice the landlord. Trials are supposed to be held in an expedited fashion following service of the complaint, see R. 6:2-1[1]; R. 6:3-1; R. 6:5-2(b); this objective could be stymied by extending the length of trials and thereby disrupt the summary calendar. The landlord would find it difficult to know in advance of trial which conditions were claimed to be defective and for what period of time. We can readily envision a situation where a long-term tenant decides to omit payment of a month's rent for reasons unrelated to the condition of the premises. That tenant could have a good chance of defeating the ensuing suit for possession by raising the defense that years earlier the premises had substantial defects. Since the tenant cannot file an answer and the landlord cannot obtain discovery, R. 6:4-3(a), the landlord would find it virtually impossible to offer evidence to rebut the tenant's evidence of the condition of the premises.
If the habitability defense in a summary dispossess action is limited to those months for which rent was not paid, the landlord may more readily ascertain what conditions presently exist. Tenants are not prejudiced by limiting the scope of the *591 habitability defense to months when rent has been withheld because they have the option of bringing a separate action for breach of covenant. See Berzito v. Gambino, supra, where the landlord instituted a summary dispossess action for nonpayment of rent and the trial court allowed an abatement for the period during which the tenant withheld the rent. The tenant then instituted a separate action for damages based on the landlord's breach of his implied covenant of habitability for those months prior to the withholding of rent. The court held that such an action was maintainable if the tenant had given the landlord advance notice of the defective conditions. Id., 63 N.J. at 469. Such action is grounded in breach of contract; the landlord would be able to obtain discovery and the matter would proceed on the normal calendar.
Plaintiff also contends that the judgment should be reversed and the case remanded because the trial judge failed to make specific factual findings, as required by R. 1:7-4. According to plaintiff, the judge should have detailed which defects went to habitability and when they existed. Plaintiff also argues that the judge should have made specific factual findings as to whether defendant gave plaintiff timely notice of the defects. Plaintiff contends that such notice is a prerequisite to maintaining a habitability defense. Plaintiff also urges that the abatement was too high and that justification of the 77% rent reduction imposed by the trial judge required detailed factual findings which were not made here.
At the outset of the hearing the judge declared that a tenant may raise a habitability defense even if he has not given the landlord notice of the defective condition. In opposition to this ruling plaintiff relies on Berzito v. Gambino, supra, where the court held that in a tenant's affirmative action to recover previously paid rent based on the landlord's breach of his implied warranty of habitability, the tenant "must give the landlord positive and seasonable notice of the alleged defect, must request its correction and must allow the landlord a reasonable period of time to effect the repair or replacement." 63 N.J. at 469. Similar notice is required before a tenant may offset *592 against rent any expenditures made to repair a vital facility. Marini v. Ireland, supra, 56 N.J. at 146. However, it has to date been questionable whether notice need be given in order to raise the defense of lack of habitability. In Park Hill Terrace Ass'n v. Glennon, 146 N.J. Super. 271, certif. den., 74 N.J. 250 (1977), the tenants withheld rent because the air conditioning did not work. The trial judge found that the lack of air conditioning rendered the premises uninhabitable, but refused to award an abatement because the landlord made reasonable, though unsuccessful, efforts to repair the air conditioning. On appeal this court held that this was not a sufficient ground for refusing to abate the rent. The court reasoned:
It is now settled that the covenant on the part of a tenant to pay rent and the covenant, be it expressed or implied, on the part of a landlord to maintain the premises in a habitable condition are for all purposes mutually dependent. Thus, now, in an action by a landlord for unpaid rent a tenant may plead by way of defense and set-off the landlord's breach of his continuing obligation of an adequate standard of habitability. Additionally, a tenant, by separate action against the landlord, may plead the breach to recover either part or all of a deposit paid on delivery of the lease for part or all of the rent thereafter paid during the term where he alleges and proves that the lessor has broken his covenant to maintain the premises in a habitable condition. In the latter instance, as opposed to a summary dispossess matter, as a prerequisite to maintaining such a suit the tenant must give the landlord positive and seasonable notice of the alleged defect, must request its correction and then allow a reasonable period of time to effect the repair or replacements. Berzito, supra [63 N.J.] at 469 [146 N.J. Super. at 277].
It was not necessary in the Park Hill case to determine whether adequate notice is a prerequisite to raising a habitability defense since in that case notice was given. The issue there was whether, after notice, a landlord's unsuccessful efforts to cure were a defense to a claim for an abatement. We doubt that the dictum in Park Hill is a correct statement of the law.
It is illogical to say that the tenant must give notice before he can repair and deduct the cost of repair from rent, Marini, supra, or institute an action for overpaid rent, Berzito, supra, but not where he seeks a rent abatement in a summary dispossess action. Without some notice a landlord can neither attempt to repair the defects nor rebut the tenant's evidence regarding habitability.
*593 Those jurisdictions recognizing an implied warranty of habitability which have considered this issue have held that the landlord either must be given notice of the defect or have knowledge of it. Mease v. Fox, 200 N.W.2d 791, 797 (Iowa Sup.Ct. 1972); Teller v. McCoy, W. Va., 253 S.E.2d 114, 126 (Sup.Ct. 1978); Hinson v. Delis, 26 Cal. App.3d 62, 69, 102 Cal. Rptr. 661, 666 (D.Ct.App. 1972); King v. Moorehead, 495 S.W.2d 65, 76 (Mo. Ct. App. 1973); Pugh v. Holmes, 253 Pa.Super. 76, 384 A.2d 1234, 1241 (Super.Ct. 1978); Accord, Restatement, Property 2d ("Landlord and Tenant"), § 5.4 at 194-195 and comment (g) at 198-199 (1977). Mease v. Fox, supra, relied upon by our Supreme Court in Berzito v. Gambino, supra, 63 N.J. at 469-470, 308 A.2d 17, is representative of the underlying rationale:
Since the basic contract remedies are available to tenant, the basic contract duties are imposed upon him. The tenant is under an obligation to give landlord notice of a deficiency or defect not known to the latter. [200 N.W.2d at 797]
Analogously, the New Jersey law on sales requires notice as a prerequisite to the buyer's assertion that the seller breached an implied warranty of merchantability. N.J.S.A. 12A:2-607(3)(a); Johnson v. Hoffman, 7 N.J. 123, 131, 132 (1951). One of the reasons for requiring notice is to enable the seller to make adjustments or replacements or take some action to minimize the buyer's loss. White and Summers, Uniform Commercial Code (1972), § 11-9 at 343-344. This rationale applies equally to a tenant asserting a defense of breach of implied warranty of habitability; timely notice enables the landlord to repair the premises and thus minimize the tenant's loss. We hold that as a prerequisite to asserting a habitability defense the landlord must either know of the defective conditions or have been notified of it by the tenant. Such a rule is consistent with Marini and Berzito and the law in other jurisdictions.
In the present case the tenant did give the landlord notice of several defects as early as September 1978. However, there is some merit to plaintiff's complaint that defendant did not notify plaintiff of the raw sewage under the house, which according to the trial testimony was the most severe defect. Plaintiff asserts *594 that it did not know of this sewage problem until March and nothing in the record indicates to the contrary.
Plaintiff also complains that defendant did not permit plaintiff a reasonable opportunity to make repairs. The judge made a brief finding on this issue, saying that he was "not impressed by the landlord's excuses." This appears to be a finding that plaintiff made insufficient efforts to repair the premises. Turner testified that after he received defendant's letter he saw her outside a drug store and she said that she would contact him about the necessary repairs. Turner said that she did not do so, but he also admitted that plaintiff made no additional attempts after that date to respond to the complaints listed in defendant's September 19 letter. On cross-examination, however, Turner was unsure about his meetings with defendant.
The evidence supports the finding that plaintiff made little effort to repair the premises but also shows that defendant was less than fully cooperative. Plaintiff's representatives should have attempted to contact defendant and make specific arrangements after plaintiff received defendant's September 19 letter. They did nothing after that date, even though a month later defendant through her attorney again gave notice of the defects and made an offer to settle the matter.
Plaintiff also argues that the 77% abatement was excessive and was unsupported by detailed factual findings. Plaintiff contends that the judge did nothing more than say that the house was uninhabitable, without detailing what defects rendered it that way or when those defects existed. According to plaintiff, the judge erred in deciding that all of the defects cited in Curley's report went to habitability, as many of them might be more properly considered as amenities.
Plaintiff rightly contends that only defects which affect the habitability of the premises can be considered in determining the amount of an abatement. As the Berzito court said:
Not every defect or inconvenience will be deemed to constitute a breach of the covenant of habitability. The condition complained of must be such as truly to render the premises uninhabitable in the eyes of a reasonable person. [63 N.J. at 469]
*595 Some of the factors to be considered are whether the defect violates an applicable housing code or sanitary regulation, whether the defect affects a vital facility, the effect of the defect on safety and sanitation, how long it has been in existence, the age of the structure, the amount of rent and whether the tenant waived a right to object to the defect or was responsible for the defect. Berzito, supra, at 470. The tenant of a dwelling affected by serious defects which impair habitability must pay the reasonable rental value only. Id. at 469.
In the present case the judge appeared to apply the correct test. He said, "if we are going to have property that belongs in the slums we are going to have slum rates," and apparently translated this into a finding that the reasonable rental value of the premises was $75 a month.
However, the judge did not say which of the defects rendered the premises uninhabitable. He seemed to be impressed by the sewage problem and a dangerous railing, but he went on to hold that the rent would remain at $75 a month until plaintiff repaired every condition cited in Curley's report, thus implying that all of those conditions affected habitability. In so doing, the judge erred.
Several of the defects clearly went to habitability, such as the sewage problem, drainage problems, exposed wires and rotted wood in the foundation. Others, however, might be more properly classified as amenities, such as the inadequate painting and papering. In fact, it appeared that by May 6 plaintiff may have corrected most of the serious defects, as Curley testified that as of that date only painting, replacing windows and repairing a small leak remained to be done. The judge did not distinguish among those various alleged defects. A trial judge must make detailed factual findings and relate them to the applicable law. State v. Singletary, 165 N.J. Super. 421, 424-425 (App.Div. 1979), certif. den. 81 N.J. 50 (1979); Reiser v. Simon, 63 N.J. Super. 297, 300-301 (App.Div. 1960). On remand the trial judge must make specific findings as to which conditions went to habitability, the duration of each defect and when the plaintiff received notice of the defect.
*596 One of the most puzzling aspects of this case concerns the sewage; while the judge understandably treated that as a major defect, one wonders why defendant did not complain about it in either her September 19 or October 13 letters, or why she did not mention it specifically during her testimony.
Finally, there may be merit to plaintiff's argument that the abatement was too high. This is difficult to determine without specific findings on the key issues. In Berzito v. Gambino, supra, defects more serious than those here led the trial judge to reduce the rent from $35 a week to $75 a month, about 50%. 63 N.J. at 463-464. In Samuelson v. Quinones, 119 N.J.Super 338 (App.Div. 1972), the trial judge reduced the rent from $90 a month to $60 for defective conditions relating to the gas range, kitchen sink, pipe leakage, broken windows, cracked walls, a defective bathroom door and chipped plaster. This court there held that the tenant was entitled to an additional abatement for lack of heat. Id. at 343. In Academy Spires, Inc. v. Brown, 111 N.J. Super. 477 (Cty.D.Ct. 1970), the judge reduced the rent by 25% based on failures in the heat, hot water, elevator service and incinerator. Id. at 487-488. In Timber Ridge Town House v. Dietz, 133 N.J. Super. 577 (Law Div. 1975), the judge awarded a 15% abatement based on a serious mud and water problem affecting the tenant's yard and entranceways. Id. at 583-584. In Newark Housing Auth. v. Scott, 137 N.J. Super. 110 (App.Div. 1975), this court upheld a 30% abatement entered on proofs of very substantial defects, including lack of heat and hot water, falling plaster, water leaks and flooding.
The extent of a rent abatement by a trial judge is a factual finding and will be affirmed if supported by credible evidence in this record. Rova Farms Resort v. Investors Ins. Co., 65 N.J. 474, 483-484 (1974). Because the trial judge in this case did not make specific factual findings as to the seriousness of the defects and the length of time they persisted it is difficult to determine whether he correctly ascertained the fair rental value of the premises in calculating the 77% abatement.
*597 We find plaintiff's remaining contention that the trial judge manifested bias and prejudice towards it to be without foundation in the record, despite the fact that the judge did allude to certain newspaper articles about plaintiff's dealings with other tenants. This reference was clearly unnecessary and any information gleaned from newspapers was an improper consideration to be used in formulating a judicial opinion.
The case is remanded to the trial judge for specific findings on (1) notice, (2) which defects affected habitability, (3) the duration of each such defect and (4) the fair rental value of the premises. The judge is free to require additional evidence if he desires.
Reversed and remanded. We do not retain jurisdiction.
NOTES
[1] "However in landlord and tenant actions for the recovery of premises, . . in lieu of directing the defendant to file his answer, [the court] shall require him to appear and state his defense at a certain time and place, to be therein specified, which time shall be not less than 5 days nor more than 15 days from the date of service of the summons, and shall notify him that if he fails to do so, judgment by default may be rendered against him for the relief demanded in the complaint."