**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1058-24

88-90 PULASKI LLC,

     Plaintiff-Appellant,

v.

MARCO ALTAMIRANO,

     Defendant-Respondent.

_____

Submitted October 16, 2025 – Decided December 12, 2025

Before Judges Mayer and Paganelli.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Docket No. LT-014194-24.

O'Hanlon Schwartz, PC, attorneys for appellant (Israel A. Schwartz and Noah A. Schwartz, of counsel and on the brief).

Respondent has not filed a brief.

PER CURIAM

    In this residential landlord tenant matter, plaintiff-landlord appeals from

the trial court's November 8, 2024 order, vacating a judgment of possession and

warrant of removal and dismissing the eviction complaint against defendant-tenant. We affirm in part and reverse and remand in part.

We glean the facts and procedural history from the trial court proceedings. On August 6, 2024, landlord filed a complaint alleging tenant failed to pay rent. Landlord claimed tenant resided in and had possession of an apartment "since . . . December 13, 2021, under a written agreement." Contrary to the complaint, in a certification attached to the complaint, landlord's counsel stated the lease was "not the subject of a written agreement." Further, landlord alleged tenant's monthly rent was $800 and had been unpaid since January 1, 2022. Landlord certified he was owed $2,250 in outstanding rent and sought attorney's fees and court costs.

A mostly illegible Return of Service statement indicated service of the complaint was effectuated on August 31, 2024. Tenant did not respond to the complaint.

On September 23, 2024, landlord submitted another certification stating tenant owed an additional one-hundred dollars, representing the filing fee for the eviction action. Tenant did not appear for the trial scheduled for September 24. On October 1, 2024, landlord obtained a judgment of possession by default. The judgment amount of $3,712 included $3,100 in base rent plus additional

A-1058-24

amounts for late charges, legal fees, and court costs. The judgment allowed for the issuance of a warrant of removal after October 4.

On October 9, 2024, the warrant for removal was served on tenant. The warrant advised tenant to vacate by October 15. On October 11, 2024, tenant filed an order to show cause (OTSC) and certification for relief with the court. He certified that he did not appear at trial because he "did not receive the court notic[e]." Further, he certified he did not owe any rent and had "all the receipts [and] proofs." Tenant alleged he tried to contact landlord before the filing of the OTSC, but he was unsuccessful.

From the bench, the trial court phoned landlord's attorney. Because no one answered at counsel's office, the court left a voice message with the court's contact information. The court proceeded to hear from tenant on the OTSC. Tenant asserted he moved into the premises fourteen years ago. Further, he contended the building superintendent agreed to a "payment plan . . . because there was a fire and some of [his] things were burned." In addition, tenant acknowledged his monthly rent was $800, but asserted the rent was reduced to $500 for three months because of the fire and his need to stay in a hotel. He further asserted he and landlord reached an agreement after tenant made repairs resulting from the fire.

3

The trial court entered the OTSC. The order: (1) stayed the judgment of possession and warrant of removal; (2) did not require tenant to make a deposit into court; (3) required landlord and tenant to appear in person and that "landlord shall show the court why the eviction of . . . [t]enant should not be further stayed and/or why other appropriate relief should not be granted"; and (4) allowed "landlord . . . [to] apply to the court to modify or dissolve th[e o]rder or to accelerate the return date."

The matter returned to court on November 8, 2024. The trial court stated "[tenant wa]s challenging the amount"; claiming he did not "owe any rent," and had "all receipts and proofs"; and that there was a verbal agreement to reduce the monthly rent payments as a result of a fire and damage to tenant's property.

Landlord's counsel stated there was a fire that "minimally affected" the apartment. Further, landlord's attorney told the trial court "there was never any agreement whatsoever to reduce or change [the] rent."

Landlord testified that tenant had been living in the unit since 2018 when landlord bought the building and tenant paid $800 a month in rent. Landlord stated there was a fire in 2021 in the basement below tenant's apartment and "there was some water damage and smoke damage." Landlord claimed it

4

repaired "whatever needed to be fixed . . . at that time." Landlord testified the last time it was in the apartment was about a year after the fire.

Landlord confirmed the complaint covered the time the period from January 2022 "to the current time." Landlord stated that there were months when tenant paid rent in full and others when he paid less. Landlord testified that, not including the November rent, tenant owed $3,900. Landlord acknowledged that tenant tried to pay the October rent, but it refused the payment.

The trial court reviewed the landlord's ledger of transactions. For the year 2022, the court found, and landlord's counsel agreed, tenant had a deficit of $900. The deficit resulted from rent payments of $500, rather than $800, in January, February, and March. Further, for the year 2023, the court found tenant made all rent payments, but noted plaintiff still carried the $900 balance. Landlord's counsel confirmed the $900 balance. Moreover, for the year 2024, the court found tenant owed August and September rent and paid October rent, but the payment was being held in escrow. Because there was no written lease agreement, the court denied landlord's request for late charges, attorney's fees or costs. Therefore, the court concluded tenant owed $2,500, comprised of: the 2022 balance of $900 and $1,600 owed from August and September 2024.

A-1058-24

Upon questioning from the court, tenant testified that landlord agreed to the $500 payments for the three months in 2022 because he had "nowhere to sleep [as] the apartment was inhabitable . . . [as a result] of the fire" and he "had to sleep at a motel." Tenant stated he paid cash for the motel and did not have receipts. Further, tenant asserted he did have proof of rent payments.

Tenant testified he spoke to the landlord about the damaged apartment. Tenant stated landlord offered him money to move. However, because tenant lived in the apartment for fourteen years, he did not want to move. Tenant testified that although landlord said he would fix the apartment, tenant fixed the apartment himself and had "receipts," but "never received a credit back" from landlord for undertaking the repairs. Tenant testified landlord agreed for tenant to make the repairs.

Tenant produced pictures of the apartment and testified they accurately depicted its condition after the fire. In addition, tenant produced video of the repairs. Further, tenant's contractor, who repaired the apartment, testified that he removed and replaced sheetrock, spackled, replaced moldings and floors, and painted the apartment. Tenant testified the repairs were completed within three weeks to a month after the fire. Although unclear from the record, it appears

6

A-1058-24

tenant paid the contractor in excess of $4,000 for the repairs. Plaintiff reiterated that he paid the rent "the entire time."

Landlord argued that the court was "holding a habitability hearing" post judgment, which was procedurally improper. Further, landlord contended the court could not, pursuant to C.F. Seabrook Co. v. Beck, 174 N.J. Super. 577 (App. Div. 1980), hear a claim for "an abatement" or "habitability" after a tenant consistently paid rent because that type of claim was a counterclaim and not permissible in an eviction action.

The trial court explained the judgment was entered in default and it had the authority to hold a hearing on an OTSC. Further, the court rejected the assertion that tenant was asserting "habitability in terms of a . . . defense," citing Marini v. Ireland, 56 N.J. 130 (1970).

In an oral opinion, the trial court stated it believed tenant's testimony. The court stated it did not believe the landlord because he had not been to the apartment and did not "know what happened."

The court found there was a fire that damaged tenant's property. The court based this finding on the testimony, photographs and video presented by tenant. Further, the court found landlord offered tenant "money to vacate." The court noted this offer established the landlord knew "there was an issue with the

7

apartment." However, "in lieu of vacating," the court found tenant made repairs and landlord gave tenant "a credit for three months off his rent."

In addition, the trial court found landlord's property was "enhanced because of the work that was done" by tenant. Therefore, the judge stated, "the fair thing to do . . . [wa]s [to] dismiss the complaint and start all over." The court found "[t]he repairs more than adequately compensate[d landlord] for the rent." Indeed, the court concluded landlord had "been enriched by the increase in the value of the apartment." The court dismissed the complaint and vacated the default judgment.

Landlord moved for reconsideration. The court denied the motion on "equitable principles." Landlord argued "equity follows the law" and tenant paid for the repairs in June 2021, which predated the dates in the complaint, and continued to pay rent thereafter. Thus, landlord argued tenant could not seek to credit the amount paid for repairs against his current rent arrears, relying on <u>C.F. Seabrook Co.</u> Landlord argued tenant's claim was an impermissible counterclaim in a summary proceeding for possession and that tenant would have to file a separate action in the Law Division. The court denied the motion based upon "[j]udicial economy."

A-1058-24

The court's November 8, 2024 order provided that it "conduct[ed] a full hearing as the [judgment of possession] was entered by way of [d]efault." The order provided:

> The tenant has satisfied the equivalent of rent due based upon the amount of monies expended to repair damages caused by the fire below his apartment and based upon monies he expended for hotel charges. The [c]omplaint and the [j]udgment of [p]ossession and [w]arrant of [r]emoval are dismissed with prejudice.

On appeal, landlord argues the trial court erred by applying "unstated equitable principles rather than the law," which "resulted in disregard for . . . procedural safeguards." Landlord contends the court: (1) allowed tenant to prosecute a counterclaim in disregard of the principles of summary dispossess proceedings and without affording landlord an opportunity to assert a meaningful defense, and (2) vacated a default judgment without rendering findings of fact or conclusion of law, citing Rule 1:7-4.

We begin our discussion with a review of the principles governing our analysis. Rule 1:7-4(a) requires that "[t]he court shall, by an opinion or memorandum decision, either written or oral, find the facts and state its conclusions of law thereon . . . on every motion decided by a written order that is appealable as of right." "In the absence of reasons, [an appellate court is] left to conjecture as to what the judge may have had in mind." In re Farnkopf, 363

9

N.J. Super. 382, 390 (App. Div. 2003) (quoting Salch v. Salch, 240 N.J. Super. 441, 443 (App. Div. 1990)). "Failure to perform that duty 'constitutes a disservice to the litigants, the attorneys and the appellate court.'" Curtis v. Finneran, 83 N.J. 563, 569-70 (1980) (quoting Kenwood Assocs. v. Bd. of Adjustment Englewood, 141 N.J. Super. 1, 4 (App. Div. 1976)). "Naked conclusions do not satisfy the purpose of" Rule 1:7-4. Id. at 570.

"The factual findings of a trial court are reviewed with substantial deference on appeal, and are not overturned if they are supported by 'adequate, substantial[,] and credible evidence.'" Manahawkin Convalescent v. O'Neill, 217 N.J. 99, 115 (2014) (quoting Pheasant Bridge Corp. v. Twp. of Warren, 169 N.J. 282, 293 (2001)). However, "[a] trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995). Therefore, "[i]n construing the meaning of a statute or the common law, our review is de novo." Nicholas v. Mynster, 213 N.J. 463, 478 (2013). Similarly, we construe a court rule under a de novo standard. See In re Ordinance 2354-12 of Twp. of W. Orange, Essex Cnty. v. Twp. of W. Orange, 223 N.J. 589, 596 (2015).

I.

We consider landlord's assertion that tenant's presentation during the return on the OTSC cause amounted to a counterclaim and was not permitted in a summary dispossess proceeding.

Under N.J.S.A. 2A:18-61.1,

> No lessee or tenant . . . may be removed by the Superior Court from any house, building, mobile home or land in a mobile home park or tenement leased for residential purposes . . . except upon establishment of one of the following grounds as good cause:
>
> > (a) The person fails to pay rent due and owing under the lease whether the same be oral or written; . . . .

Rule 6:3-4(a) provides that "[s]ummary actions between landlord and tenant for the recovery of premises shall not be joined with any other cause of action, nor shall a defendant in such proceedings file a counterclaim or third-party complaint."  In C.F. Seabrook Co., we noted "[t]he terms set[-]off and counterclaim are generally used interchangeably" and "a set[-]off is essentially the same as a counterclaim."  174 N.J. Super. at 588.

Moreover, a tenant may not "raise the habitability issue with regard to a time period for which it is not claimed he is in default or for which the rent is already paid." Id. at 589 (quoting Academy Spires, Inc. v. Jones, 108 N.J. Super.

11

395, 402 (App. Div. 1970)). This would allow for a counterclaim, not permitted by Rule 6:3-4. See ibid.

Against this well-established law, we note landlord filed its complaint on August 6, 2024. Landlord alleged tenant's failure to pay rent began January 1, 2022. The court found landlord could claim: (1) $900 for the period between January to March 2022; (2) $800 for August 2024; and (3) $800 for September 2024. We consider these findings in turn.

First, we consider the $900 from the period of time between January 2022 and March 2022. The landlord was not entitled to possession on this basis. Landlord incorrectly asserts that tenant relies on habitability to explain the rent reduction for the three months in 2022. While a habitability claim would have been an impermissible counterclaim, tenant is not relying on habitability for this disputed time period. Instead, tenant's defense of paying $900 less in rent is that there was an oral modification of the rent agreed to by landlord for those three months between him and landlord. The trial court believed tenant's testimony that landlord agreed to this reduced rent. Indeed, landlord did not testify to the contrary. Therefore, the court did not err in finding tenant's rent for the three months in 2022 was not "due and owing," see N.J.S.A. 2A:18-61.1, because tenant paid the agreed upon amount. It was permissible for tenant to assert a

12

defense to the amount due for a period claimed in landlord's complaint. See

Marini, 56 N.J. at 140 ("[E]quitable as well as legal defenses asserting payment

or absolution from payment in whole or in part are available to a tenant in a

dispossess action and must be considered by the court.").

Next, we consider the trial court's finding regarding outstanding rent from

August and September 2024. We note the September rent was not "due and

owing" when landlord filed the complaint in August. "[T]he amount claimed to

be due must be legally owing at the time the complaint was filed." McQueen v.

Brown, 342 N.J. Super. 120, 126 (App. Div. 2001) (internal quotation marks

omitted) (quoting Chau v. Cardillo, 250 N.J. Super. 378, 384 (App. Div. 1991)).

Therefore, the trial court did not have jurisdiction over the September rent

amount. See Sudersan v. Royal, 386 N.J. Super. 246, 251 (App. Div. 2005).

Thus, landlord would not have been entitled to possession on the basis the

September rent was outstanding.

Consequently, we affirm the dismissal of landlord's claim concerning the

September 2024 rent, although we require it to be without prejudice, and we do

so for different reasons than those stated by the trial court. See Hayes v.

Delamotte, 231 N.J. 373, 387 (2018) (applying the well-settled principle "that

appeals are taken from orders . . . and not from opinions," and that orders may

A-1058-24

be affirmed for reasons different from those set forth by the trial court (quoting Do-Wop Corp. v. City of Rahway, 168 N.J. 191, 199 (2001))).

We next consider the August 2024 rent. This amount was alleged to be "due and owing," see N.J.S.A. 2A:18-61.1, when landlord filed the complaint. The court determined this amount was "due and owing," ibid., however, because tenant's repairs "enhanced" the apartment, "enriched" landlord, and "more than adequately compensate[d landlord] for the rent," the court determined tenant was not responsible for payment.

Whether the court's determination rested on set-off or habitability, it was misplaced. A set-off is "essentially the same," as a counterclaim. C.F. Seabrook Co., 174 N.J. at 589. Tenant's assertion of a set-off or counterclaim was impermissible under the Rules governing summary dispossess actions. See ibid. Moreover, if the court determined tenant's claim was one for habitability it was not permitted under C.F. Seabrook Co. because any claim for habitability arose in May 2021—when the fire occurred—and abated in June 2021, once tenant completed the repairs. Tenant paid the rent during this period. Landlord alleged tenant's default occurred after January 2022. Thus, a habitability claim was improper because a tenant may not "raise . . . habitability . . . with regard to a

A-1058-24

time period for which it is not claimed he is in default or for which the rent is already paid." Id. at 589.

Moreover, the trial court's reliance upon "[j]udicial economy" to consider the August rent was misplaced. We have rejected notions of judicial economy in these situations. See ibid. ("[W]e disagree with [the] contention that to avoid the expense and delay attendant upon multiple actions all habitability claims should be consolidated.").

Therefore, we affirm that part of the court's order dismissing landlord's claims regarding the January, February, and March 2022 rent period. Moreover, we affirm that part of the court's order dismissing landlord's claims regarding the September 2024 rent, although we do so without prejudice.

For the reasons stated, we reverse the order dismissing the complaint regarding the August 2024 rent. We reinstate landlord's complaint for the parties to present evidence regarding the payment of August 2024 rent. This includes tenant's right to invoke applicable statutory protections as suggested by landlord and mentioned below.

## II.

Landlord asserts that the trial court erred in failing to make findings of fact or conclusions of law, under Rule 1:7-4, regarding its reasoning for the

vacatur of landlord's judgment. Landlord asserts the court did not provide an analysis under "the traditional statutory bases for vacating a judgment based on non-payment of rent," citing N.J.S.A. 2A:18-55, N.J.S.A. 2A:42-8, N.J.S.A. 2A:42-9, N.J.S.A. 2A:42-10.16(a), or N.J.S.A. 46:8-49.3; nor did the court provide an analysis for relief from the judgment under Rule 4:50-1. Instead, landlord asserts, the court's reasoning appears to rest on "equitable principles," but the court failed to "explain what equitable principles allow[ed] it to disregard the law pertaining to vacating default judgments."

"[T]he trial court had the authority to invoke Rule 4:50-1 to vacate a judgment for possession in a summary-dispossess action after a warrant of removal had been executed." Hous. Auth. of Morristown v. Little, 135 N.J. 274, 290 (1994). The court's "sound discretion . . . [is] guided by equitable principles in determining whether relief should be granted or denied." Id. at 283. "The decision . . . to open a judgment will be left undisturbed unless it represents a clear abuse of discretion." Ibid.

We recognize tenant did not make a formal motion under Rule 4:50-1. Moreover, the trial court did not specifically mention the Rule. Nevertheless, given the unique procedural posture of this matter, with the trial court conducting a plenary hearing, we conclude there is no abuse of discretion. After

16

hearing testimony, the court concluded the default judgment should not stand based on "equitable principles." "Rule 4:50 is instinct with equitable considerations." Pro. Stone, Stucco & Siding Applicators, Inc. v. Carter, 409 N.J. Super. 64, 68 (App. Div. 2009). Moreover, "relief from default judgments are to be 'viewed with great liberality, and every reasonable ground for indulgence is tolerated to the end that a just result is reached.'" Ibid. (quoting Marder v. Realty Constr. Co., 84 N.J. Super. 313, 319 (App. Div. 1964)). This liberal and indulgent approach recognizes the desire for cases to be "decided on the merits." Nowosleska v. Steele, 400 N.J. Super. 297, 303 (App. Div. 2008). Therefore, we leave undisturbed the trial court's order vacating the default judgment and the resultant warrant of removal.

Affirmed in part and reversed and remanded in part. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-1058-24